|   |   |
|---|---|
| ROBERT JOHN STOCKTON, JR., | No. C 11-5562 RMW (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| vs. |   |
| DERREL JOHN ADAMS, Warden, |   |
| Respondent. |   |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and DENIES the petition.

**BACKGROUND**

In his first amended petition, petitioner claims that his due process rights were violated when he was validated as a gang member in 2009, which resulted in his indefinite placement in the Secured Housing Unit ("SHU"). Specifically, on October 26, 2009, Sergeant Pieren notified petitioner that an investigation had been completed, which revealed that petitioner was an associate of a prison gang called the Aryan Brotherhood. (First Am. Pet. at viii, Ex. 1 at 2.) The

investigation further revealed that the prison relied upon four source items of documentation that were indicative of association with a validated gang member or associate. (Id., Ex. 1 at 2.) Ultimately, petitioner was validated as an associate of the Aryan Brotherhood and placed in the SHU for an indefinite period of time. (Id., Ex. 2 at 2-3.) Petitioner unsuccessfully challenged this designation via the administrative grievance process (id., Ex. X-1), as well as through state habeas petitions (id., Ex. X-2).

The Superior Court was the only state court to issue a reasoned opinion. (Id., Ex. X-2.) In its order denying habeas relief, the Superior Court found that the documentation used to validate petitioner's gang association was sufficient. Specifically, it found that there were at least three independent source items indicative of association with validated gang members or associates, thus complying with the California Code of Regulations. As a result, the evidence presented satisfied the less stringent federal standard that the validation be supported by "some evidence."

## DISCUSSION

A.  Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir. 2000).  Here, that decision is the Superior Court.

B.      Petitioner's Claims

As grounds for relief, petitioner argues that the conditions of being in the SHU have resulted in atypical and significant hardship to him; that the validation process was deficient in procedural due process protections and was not supported by some evidence; and that the prison administrative regulation defining tattoos and symbols is vague.  Petitioner requests that his gang validation be overturned, that he be released from the SHU, and that his ability to earn good-time credits be restored.

1.      Due process

The Supreme Court holdings on prisoners' rights in administrative segregation placement decisions are quite limited and are most recently found in Sandin v. Conner, 515 U.S. 472

(1995), which sets out the criteria for determining whether there is a protected liberty interest, and Wilkinson v. Austin, 545 U.S. 209 (2005), which held that an indefinite placement in a harsh administrative segregation unit deprived inmates of a protected liberty interest.  Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance."  See Sandin, 515 U.S. at 477-87.  Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.  The Supreme Court in Wilkinson suggested that indefinite placement in a restrictive "supermax" facility, where inmates are not eligible for parole consideration and receive annual reviews imposes an "atypical and significant hardship within the correctional context."  See Wilkinson, 545 U.S. at 223-25.

    Based on the above referenced law, petitioner appears to have a protected liberty interest against indefinite placement in the SHU.  SHU conditions are severe and may affect petitioner's eligibility for parole.  The potential to spend years in the harsh conditions of the SHU presents an atypical and significant hardship and therefore amounts to a deprivation of a protected liberty interest.

    Having determined that petitioner has demonstrated a protected liberty interest, the next step then is to determine what process is due.  Due process requires that the administrative segregation process meet minimal procedural requirements: (1) an informal non-adversary hearing within a reasonable time after being segregated, (2) notice of the charges or the reasons segregation is being considered, and (3) an opportunity to present his views.  Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), overruled on other grounds by Sandin v. Connor, 515 U.S. 472, 481 (1995).  The administrative determination also must meet the "some evidence" standard of Superintendent v. Hill, 472 U.S. 445, 455 (1985). Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003).  Because the standard for "some evidence" is not high, this court

need only decide whether there is any evidence at all that could support the prison officials' administrative decisions. Id. at 1287. The evidence supporting the administrative determination, however, must bear "some indicia of reliability." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted).

With respect to the procedural protections, petitioner admits that he received notice of the reasons segregation was being considered (First Am. Compl., Ex. 1 at 2), an opportunity to be heard via interview and written response (id., Ex. 1 at 12), notification that he was validated (id., Ex. 2 at 2-3), and another informal hearing with the Institutional Classification Committee where he was permitted to present any relevant information (id., Ex. 2 at 3-4). Moreover, despite petitioner's protestations that the procedures used were inadequate, Toussaint has specifically rejected his arguments. See Toussaint, 801 F.2d at 1000-01 ("We specifically find that the due process clause does not require detailed written notice of charges . . . or a written decision describing the reasons for placing the prisoner in administrative segregation. . . . We also find that due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation."). Thus, petitioner received all the procedural process he was due.

With respect to petitioner's argument that the validation was not supported by "some evidence," the court notes that respondent is correct that there is no clearly established Supreme Court authority that controls petitioner's claim. The Supreme Court has not held that the procedural protections include any evidentiary sufficiency requirement for the decision to place an inmate in administrative segregation. In a prison disciplinary hearing, for example, due process requires that there be an evidentiary basis for the prison officials' decision. See Hill, 472 U.S. at 455 (1985) (standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced). However, the Supreme Court has not extended Hill to the administrative segregation placement context. Cf. Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011) (implicitly declining to find, for purposes of section 2254(d) habeas analysis, that constitutional protections required for parole denial included any evidentiary sufficiency requirement). While not required based on Supreme Court precedent, the Ninth Circuit and

district courts within the circuit have applied the "some evidence" standard to an inmate's placement in the SHU for gang affiliation. See, e.g., Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003).

In light of the absence of Supreme Court authority imposing any evidentiary sufficiency requirement or any requirement for the reliability of evidence, federal habeas relief cannot be granted to petitioner on the basis of a claim that the placement decision is based on insufficient evidence or evidence that lacks sufficient indicia of reliability. The bulk of petitioner's claims relates to the sufficiency of the evidence used by the prison to validate petitioner as an associate of the Aryan Brotherhood prison gang. However, without Supreme Court precedent controlling the the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. See Carey v. Musladin, 549 U.S. 70, 77 (2006). For that reason alone, petitioner is not entitled to habeas relief on his due process evidentiary claim.

Alternatively, even assuming that *Hill* applies to an administrative segregation placement decision, petitioner's due process claim fails. Sufficient evidence exists to support the decision to validate him as a gang associate. Four pieces of evidence were used by prison officials to conclude that petitioner met the criteria for validation as an associate of the Aryan Brotherhood prison gang. These four documents or source items provided "some evidence" to support the validation decision. The decision was based on evidence in the form of: (1) an October 23, 2009 discovery of a drawing of a three leaf clover, or "Shamrock" and a Saint Patrick's Day card depicting numerous shamrocks;[1] (2) a December 7, 2007 confidential memorandum reporting that during a property search of a validated associate of the Aryan Brotherhood, the prison found petitioner's name, CDCR number, and phone number listed among other validated inmates' personal information; (3) a January 23, 2006 confidential memorandum reporting that an intercepted coded communication from an Aryan Brotherhood associate to another associate

---

[1] The shamrock is a symbol used by the Aryan Brotherhood prison gang to show membership or affiliation. (First Am. Pet., Ex. 1 at 5.)

identified petitioner as "having the cipher to the coded section of the letter"; and (4) a December 26, 2004 confiscation of a piece of paper found in an inmate Aryan Brotherhood associate with petitioner's name and CDCR number on it. (First Am. Pet., Ex. 1 at 2, 5, 7, 8, 10, 11.) The Superior Court conducted an in camera review of the source documents used. (Id., Ex. X-2 at 4.) It found that the source items, individually and in the aggregate, provided "some evidence" to support the decision to validate petitioner.

The court agrees. Despite petitioner's argument regarding the alternatively innocent meanings to his possession of the shamrock, the source item detailing petitioner's drawing of a shamrock as well as the confiscation of the St. Patrick's Day card noted that the shamrock is a symbol utilized by the Aryan Brotherhood gang to show membership to the gang. See Hill, 472 U.S. at 457 (recognizing that evidence may qualify as "some evidence" even if it does not "logically preclude[] any conclusion but the one reached."). In addition, this court does not decide anew whether to validate him, but only whether there was some evidence with sufficient indicia of reliability to support the decision reached by the prison. See Bruce, 351 F.3d at 1287 ("we do not examine the entire record, independently assess witness credibility, or reweigh the evidence."). Moreover, the use of a shamrock as a symbol of the Aryan Brotherhood gang is well-documented in case law. See, e.g., United States v Bingham, 653 F.3d 983, 987 (9th Cir. 2011); Yandell v. Cate, No. 10-5811 MHP, 2013 WL 871945, at *1 (N.D. Cal. March 6, 2013). Accordingly, petitioner's possession of the shamrock images was sufficient to meet the "some evidence" standard.

Thus, even assuming that Hill is clearly established law for purposes of this claim, petitioner has not demonstrated that the state court's decision was contrary to, or an unreasonable application or the "some evidence" requirement and he is not entitled to habeas relief on this claim.

///

///

///

///

2.  <u>Vagueness</u>

Petitioner claims that California Code of Regulations § 3378(c)(8)(B)[2] is unconstitutionally vague because it does not define the contours of a "gang symbol." Specifically, petitioner argues that Section 3378(c)(8)(B) does not provide him with sufficient notice that a shamrock would indicate affiliation with the Aryan Brotherhood prison gang.

A statute or regulation may be challenged on due process grounds as being impermissibly vague. The due process doctrine of vagueness "incorporates notions of fair notice or warning." <u>Smith v. Goguen</u>, 415 U.S. 566, 572-73 (1974). It also incorporates a requirement that specificity be sufficient to avoid arbitrary and discriminatory enforcement. <u>See id.</u> at 572-73. Thus, to survive a vagueness challenge, Section 3378(c)(8)(B) must define "tattoos and symbols": "(1) with sufficient definiteness that ordinary people can understand what conduct [can be used as evidence of association], and (2) in a manner that does not encourage arbitrary and discriminatory [validation]." <u>Castro v. Terhune</u>, 712 F.3d 1304, 1311 (9th Cir. 2013).

As an initial matter, because there is no clearly established Supreme Court law applying the void-for-vagueness doctrine to prison administrative regulations, the state court's denial of this claim cannot be objectively unreasonable. <u>Cf. id.</u> at 1310 (assuming "that the void-for-vagueness doctrine applies to prison administrative regulations."). For this reason alone, petitioner's void for vagueness claim fails.

Nonetheless, even assuming that the vagueness doctrine applies to prison administrative regulations, petitioner's claim fails. The court notes that in <u>Castro</u>, the Ninth Circuit found that Section 3378(c)(4) and its associated regulations, including Section 3378(c)(8)(B), were

---

[2] Section 3378 has since been amended and no longer includes subsection (c)(8)(B). However, in 2009, that subsection provided that, the independent source items for gang identification determination includes "(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang investigators as begin used by and distinctive to specific gangs. Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo is used by and distinctive of gang association or membership. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution." All citations to Section 3378 refer to the 2009 version as that was the regulation in effect at the challenged time.

1  sufficiently definite to notify an inmate that his conduct could be used as evidence of his gang

2  involvement. Id. at 1311-12.  With regard to the second factor, petitioner has not produced any

3  evidence that the prison applied Section 3378(c)(8)(B) in an arbitrary or discriminatory manner.

4  By relying on four separate source items to validate petitioner, the prisoner had more evidence

5  supporting petitioner's validation than the state regulations required. See Cal. Code Regs., tit. 15

6  § 3378(c)(4) (requiring three independent source items).  Each of the four source items fit within

7  a category of evidence that the prison is authorized to use pursuant to the regulations.  See

8  generally Cal. Code Regs., tit. 15 § 3378(c)(8)(A)-(M).  It also appears that prison officials

9  followed the procedures required by the regulations.  Thus, as in Castro, there is no evidence that

10  Section 3378(c)(8)(B) is facially invalid, or was applied in an arbitrary or discriminatory

11  manner.  Accord  Chavez v. Lewis, No. 11-0376 EMC, 2012 WL 2906134, at *8-*10 (N.D. Cal.

12  July 13, 2012) (rejecting claim that Section 3378(c)(8)(B) is unconstitutionally vague or

13  overbroad); Martinez v. Fischer, No. CIV S-10-0366 GGH P, 2011 WL 4543191, at *8 (E.D.

14  Cal. Sept. 28, 2011) (same)).

15  For the above stated reasons, the state court's rejection of petitioner's facial and as-

16  applied challenge to Section 3378(c)(9)(B) was not objectively unreasonable.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED.  The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

The clerk shall terminate all pending motions, enter judgment, and close the file.

IT IS SO ORDERED.

DATED: _____

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOHN STOCKTON JR,<br><br>          Plaintiff,<br><br>   v.<br><br>DERREL JOHN ADAMS et al,<br><br>          Defendant.<br>_____/ | Case Number: CV11-05562 RMW<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 10, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Robert John Stockton J-80992
C-11-102 Security Housing Unit
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Dated: February 10, 2015

                                        Richard W. Wieking, Clerk
                                        By: Jackie Lynn Garcia, Deputy Clerk